## HIRAM WADSWORTH *vs.* SUSANNAH WILLIAMS.

A levy of an execution against A. on land of which the record title stands in the name of S. may rightfully be suspended, under Gen. Sts. *c.* 133, § 50, by reason of a prior attachment of the land in an action by H. against S. and A. jointly, although it is not a special attachment under Gen. Sts. *c.* 123, § 55.

In appraising and setting off land on execution, subject to a mortgage which includes other land, it is right and lawful to deduct from its value a proportionate part of the amount of the mortgage.

WRIT OF ENTRY brought by the assignee in insolvency of Daniel Bacon, to recover two parcels of land in Petersham. The tenant pleaded *nul disseisin*, and filed a specification of defence claiming title to the demanded premises under a conveyance from Avira Williams.

At the trial in the superior court, before *Ames*, J., it appeared that the tenant owned a farm, of which these parcels were a part; and that in 1839 she conveyed it to her son Avira, who in 1857 conveyed it back to her, subject to a mortgage to Francis A. Brooks. The demandant contended that this conveyance by Avira was in fraud of his creditors, and claimed title to the two parcels of land by virtue of a levy thereon of an execution in favor of Daniel Bacon against Avira, dated December 11, 1861. It appeared that the demanded premises were seized on this execution, and appraisers were qualified, who viewed them on January 22, 1862; and that then, by reason of a prior attachment in an action of Charles Hapgood against Susannah and Avira and others, (which was a general attachment of all the real estate of Susannah and Avira in the county, but not a special attachment, under Gen. Sts. *c.* 123, § 55, of any real estate of Avira of which the title stood in the name of Susannah,) the officer suspended further proceedings under the levy until April 15, 1863, when he completed it and returned the execution fully satisfied. By the certificate of the appraisers, and by his return, it appeared that they estimated the value of the parcels set off under the levy by first fixing a valuation on them, and a separate valuation on the rest of the farm, and then apportioning the amount due on the mortgage, which was upon the whole

farm, between these two sums proportionally, and deducting from the valuation of the parcels in dispute the amount of their proportion of the mortgage debt, thus ascertained.

The tenant contended that this levy was invalid, because, 1. the suspension of it was unauthorized and unlawful, there being no previous attachment of the land which the officer had any necessity or right to regard; and 2. because the deduction of any portion of the mortgage debt in the appraisement, in the manner described, was also unauthorized and unlawful.

The judge being of opinion that on these facts the demandant could not support his action, a verdict for the tenant was returned by agreement, and the case was reported for determination by this court.

*P. E. Aldrich & C. Brimblecom,* for the demandant.

*W. A. Williams,* for the tenant. ·

HOAR, J.* There are two objections taken by the tenant to the validity of the levy under which the demandant claims, neither of which seems to us sufficient to defeat it.

1. The levy was made upon land, the record title of which stood in the name of Susannah Williams, but which was taken as the property of Avira Williams, upon the ground that the conveyance by him to Susannah Williams was fraudulent as to his creditors. After the land was taken on the execution, the completion of the levy was suspended on account of a prior attachment in favor of one Hapgood against Susannah and Avira Williams. This attachment was a general one of the real estate of Susannah and Avira Williams; but not a special attachment of any real estate of Avira, of which the title stood in the name of Susannah, under the provisions of Gen. Sts. *c.* 123 § 55. The tenant contends that this was not such a prior attachment as justified the suspension of the levy; but there seems to be no good reason for such an opinion. The practice of suspending proceedings under a levy on account of prior

---

* This, and the following Worcester cases, except as otherwise specified in notes to them, were argued at Boston in December 1867, and January 1868 before HOAR, CHAPMAN, GRAY, and FOSTER, JJ.

attachments appears to have been first authorized, or recognized as a lawful practice, by Rev. Sts. *c.* 97, § 34. Report of Commissioners on Rev. Sts., note to *c.* 97, §§ 32, 33. Gen. Sts. *c.* 133, § 50. The statute does not define what attachments shall be sufficient to justify the officer making the levy for suspending it; but must be understood to refer to any attachment which might impair or defeat the effect of the levy. The land being equally liable to a joint creditor of Susannah and Avira Williams, whether the record title was in one or the other, such a creditor might have no interest to question the legality of the conveyance from Avira to Susannah; and his attachment of it as the property of Susannah, in satisfaction of a debt due from Avira also, might perhaps have been valid as against a separate creditor of Avira. But however that might be, it was an attachment of the same land, and raised a question of title sufficient to warrant the officer in waiting to complete his levy until it should be determined.

2. The land upon which the levy was made being subject to a mortgage which included other land, the appraisers deducted from the value of the land taken a proportionate part of the amount of the mortgage. This does not make the levy invalid. In *Brown* v. *Worcester Bank*, 8 Met. 47, the court intimated an opinion that this was the proper course to pursue; and it certainly seems to be equitable and just to both parties. Indeed, in no other way could a levy be made upon land mortgaged, where the value of the equity of redemption exceeded the amount of the execution to be levied; unless by wholly disregarding the mortgage in the appraisement, which would be prejudicial to the creditor. To the suggestion that the statute requires the whole mortgage debt to be deducted, the answer is twofold: first, that it would require more land to be set off to satisfy the execution, and might be prejudicial to the debtor, in case other interests were concerned in the other part of the land subject to the mortgage; and secondly, that deducting less than the amount which might have been deducted from the value of the land taken cannot be injurious to the debtor.

*New trial granted.*